UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

|  |  |  |
|---|---|---|
| BERNIECE J. DeLONG, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:10-cv-1056 |
| | ) | |
| v. | ) | Honorable Joseph G. Scoville |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **OPINION** |
| Defendant. | ) | |
| | ) | |

        This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking

review of a final decision of the Commissioner of Social Security denying plaintiff's claims for

disability insurance benefits (DIB) and supplemental security income (SSI) benefits.  On July 14,

2003, plaintiff filed her applications for benefits alleging a February 23, 1997 onset of disability.[1]

Her disability insured status expired on June 30, 2004.  Thus, it was plaintiff's burden on her claim

for DIB benefits to submit evidence demonstrating that she was disabled on or before June 30, 2004.

*See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

---

[1]SSI benefits are not awarded retroactively for months prior to the application for benefits.
20 C.F.R. § 416.335;  *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also
Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004).  The earliest month in
which SSI benefits are payable is the month after the application for SSI benefits is filed.  Thus,
August 2003 is plaintiff's earliest possible entitlement to SSI benefits.

Plaintiff's claims for DIB and SSI benefits were denied on initial review. (A.R. 41-44, 162-65). On May 5, 2005, plaintiff received her first hearing[2] before an administrative law judge (ALJ). (A.R. 1577-1627). On July 1, 2005, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 409-20, 801-12). On October 22, 2005, the Appeals Council vacated the ALJ's decision and remanded the matter for further administrative proceedings. (A.R. 433-35, 817-19). On February 21, 2006, plaintiff received her second administrative hearing. (A.R. 1543-1576). On March 29, 2007, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 823-29, 870-76). On November 27, 2007, the Appeals Council vacated the ALJ's decision and remanded the matter for further administrative proceedings. (A.R. 831-33, 883-85). On August 26, 2008, plaintiff received her third administrative hearing. (A.R. 1494-1542). On December 3, 2008, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 23-34). On August 30, 2010, the Appeals Council denied review (A.R. 11-13), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States magistrate judge conduct all further proceedings in this case, including entry of final judgment. (docket # 12). Plaintiff asks the court to overturn the Commissioner's decision on the following grounds:

1. The Commissioner "erred as a matter of law in relying on a consulting medical source in determining residual functional capacity and in failing to assess non-exertional limitations on a function-by-function basis instead of relying on consistent opinions of the treating physicians of record[;]"

---

[2]Plaintiff was represented by counsel at all of her administrative hearings.

2.    The Commissioner "erred as a matter of law in improperly assessing lay testimony" and in assessing other medical source opinions; and

3.    The Commissioner erred as a matter of law in assessing plaintiff's credibility and mischaracterized the evidence of record.

(Plf. Brief at 1, docket # 16). Upon review, the Commissioner's decision will be vacated and the matter remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because

there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, No. 12-3553, __ F.3d __, 2013 WL 896255, at * 7 (6th Cir. Mar. 12, 2013)("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff met the disability insured status requirements of the Social Security Act on February 23, 1997, her alleged onset of disability, and continued to meet the requirements through June 30, 2004, but not thereafter. (A.R. 25). He found that the work plaintiff had performed after her alleged onset of disability as a bartender/waitress and daycare provider did not rise to the level of substantial gainful activity. (A.R. 25). The ALJ found that plaintiff had the following severe impairments: "status-post lumbar fusion with back pain, an affective disorder, and polysubstance abuse." (A.R. 25). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 26-28).

The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a limited range of light work as defined in 20 CFR 404.1567(b), and 416.967(b). She is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit six hours of an eight-hour workday; and stand and/or walk four hours of an eight-hour workday. She is able to do simple, unskilled light work where she does not climb ladders, ropes, or scaffolds and where she does no more than occasional stooping or crouching.

(A.R. 28). The ALJ found that plaintiff's subjective complaints were not fully credible. (A.R. 28-32). He found that plaintiff did not have past relevant work. (A.R. 32). She was 41-years-old as of her alleged onset of disability, 48-years-old when her disability insured status expired, and 52-years-old as of the date of the ALJ's decision. Thus, she was classified as a younger individual at all times relevant to her claim for DIB benefits. She remained classified as a younger individual through November 6, 2005. On and after November 7, 2005, she was classified as an individual closely approaching advanced age. (A.R. 32). Plaintiff has at least a high-school education and is able to communicate in English. (A.R. 32). She lacks transferable work skills. (A.R. 32). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 14,500 jobs in the State of Michigan that the hypothetical person would be capable of performing. (A.R. 1538-39). The ALJ found that this constituted a significant number of jobs. Using Rules 202.13 and 202.30 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled.[3] (A.R. 33).

_____

[3]Plaintiff has a substantial history of alcohol and drug abuse. (*See e.g.*, A.R. 454-60, 463, 486, 488, 545, 553, 569-74, 578, 629, 638-40, 661, 664, 711, 725, 913, 919, 935, 953-54, 965, 1113, 1129, 1154, 1166, 1181, 1054). Since 1996, the Social Security Act, as amended, has precluded

**1.**

Plaintiff argues that the ALJ's decision should be overturned on the basis of evidence that she never presented to the ALJ. (Plf. Brief at 6, 7, 31, 32). This is patently improper. It is clearly established law within the Sixth Circuit that the ALJ's decision is the final decision subject to review by this court in cases where the Appeals Council denies review. This court must base its review of the ALJ's decision upon the administrative record presented to the ALJ. The Sixth Circuit has repeatedly held that where, as here, the Appeals Council denies review and the ALJ's decision becomes the Commissioner's decision, the court's review is limited to the evidence presented to the ALJ. *See Jones v. Commissioner*, 336 F.3d at 478; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Osburn v. Apfel*, No. 98-1784, 1999 WL 503528, at * 4 (6th Cir. July 9, 1999) ("Since we may only review the evidence that was available to the ALJ to determine whether substantial evidence supported [his] decision, we cannot consider evidence newly submitted on appeal after a hearing before the ALJ."). The court is not authorized to consider plaintiff's proposed additions to

---

awards of SSI and DIB benefits based upon alcoholism and drug addiction. *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935; *see also Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004); *Hopkins v. Commissioner*, 96 F. App'x 393, 395 (6th Cir. 2004). The claimant bears the burden of demonstrating that her substance abuse is not a contributing factor to her disability. *See Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007);*Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999); *see also Zarlengo v. Barnhart*, 96 F. App'x 987, 989-90 (6th Cir. 2004). The ALJ observed that plaintiff's "substance abuse [was] likely to have been a material factor regarding her affective problems." (A.R. 31). However, because he found that plaintiff was not disabled, he was not required to decide the issue of whether substance abuse was material to a finding of disability. *Gayheart v. Commissioner*, 2013 WL 896255, at * 14.

the record in determining whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner correctly applied the law. *See Cline*, 96 F.3d at 148.

"A district court's authority to remand a case for further administrative proceedings is found in 42 U.S.C. § 405(g)." *Hollon v. Commissioner*, 447 F.3d 477, 482-83 (6th Cir. 2006). The statute permits only two types of remand: a sentence four (post-judgment) remand made in connection with a judgment affirming, modifying, or reversing the Commissioner's decision; and a sentence six (pre-judgment) remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision. *Hollon*, 447 F.3d at 486 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991)). The court cannot consider evidence that was not submitted to the ALJ in the sentence four context. It only can consider such evidence in determining whether a sentence six remand is appropriate. *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d at 357.

Plaintiff has the burden under sentence six of 42 U.S.C. § 405(g) of demonstrating that the evidence she now presents in support of a remand is "new" and "material," and that there is "good cause" for the failure to present this evidence in the prior proceeding. *See Hollon*, 447 F.3d at 483; *see Ferguson v. Commissioner*, 628 F.3d 269, 276 (6th Cir. 2010). Courts "are not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486. Plaintiff has not addressed, much less carried her burden.[4] *See Ferguson*, 628 F.3d at 276; *Hollon*, 447 F.3d at 483-84.

---

[4]Although plaintiff's attorney wasted dozens of pages on items such as a seven-page "summary" of the hearing testimony (Plf. Brief at 23-29), plaintiff's brief and reply brief do not include any request for remand to the Commissioner under sentence six of 42 U.S.C. § 405(g). Plaintiff filed a 59-page initial brief (docket # 16), which is three times the length allowed under the court's January 27, 2011 order. (docket # 15). On March 31, 2011, the court granted plaintiff leave to file a 30-page initial brief. (docket # 18). Plaintiff's attorney never filed a corrected brief fitting within the expanded page limitation. Attorney Benjamin Symko is expressly warned that his

A significant portion of the evidence filed after the ALJ entered his decision is not new. However, some of the proffered evidence is new because it was generated after the ALJ's decision. (A.R. 1413-25, 1432-37, 1444-54, 1458-62, 1468-74, 1476-80). *See Ferguson*, 628 F.3d at 276; *Hollon*, 447 F.3d at 483-84.

"Good cause" is not established solely because the new evidence was not generated until after the ALJ's decision. *See Courter v. Commissioner*, 479 F. App'x 713, 725 (6th Cir. 2012). The Sixth Circuit has taken a "harder line." *Oliver v. Secretary of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986). The moving party must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision. *See Ferguson*, 628 F.3d at 276. Plaintiff has not addressed, much less carried, her burden of demonstrating good cause.

Finally, in order to establish materiality, plaintiff must show that the introduction of the evidence would have reasonably persuaded the Commissioner to reach a different conclusion. *See Ferguson*, 628 F.3d at 276; *Foster v. Halter*, 279 F.3d at 357. Plaintiff has not addressed or carried her burden.

The ALJ entered his decision on December 3, 2008. None of the documents generated after December 3, 2008, would have reasonably persuaded the ALJ to reach a different decision on plaintiff's claims for SSI and DIB benefits, especially the latter because plaintiff's disability insured status expired more than four years before this material was generated.

- On December 3, 2008, immediately after receiving the ALJ's decision, plaintiff reported to Physician's Assistant Robert Poehl that she was upset

---

disregard for applicable page limitations will not be tolerated. In future cases, the court will either strike the offending brief in its entirety or disregard every page in excess of the applicable page limitation.

that her claims for DIB and SSI benefits had been denied. Mr. Poehl stated, "I do feel that she should qualify for disability given her difficulties with radicular back pain as well as some issues with memory loss and bipolar disorder." (A.R. 1455). The issue of disability is reserved to the Commissioner. Mr. Poehl's opinion that plaintiff "should qualify for disability" would not have been entitled to any weight. *See* 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3).

• On December 12, 2008, carotid diagnostic imaging on December 12, 2008, indicated "mild bilateral atherosclerosis disease." (A.R. 1424). X-rays taken of plaintiff's pelvis on December 23, 2008, returned normal results. (A.R. 1422). X-rays of her lumbar spine showed the "postsurgical fusion at the L5-S1 level" with "no evidence of acute fracture involving the lumbar spine." (A.R. 1423).

• On January 8, 2009, Mr. Poehl noted plaintiff's return to crack cocaine use. Plaintiff reported that she had a headache and was quite distressed "by her problem of once again using illegal substance." (A.R. 1454). Mr. Poehl discussed the problem with plaintiff and reiterated that she must stop using illegal drugs. (A.R. 1454).

• On January 10, 2009, plaintiff appeared at Gerber Memorial Health Services complaining of right flank pain radiating into her back. Uday Shankar, M.D., noted that plaintiff's "35-pack year history of smoking and [that she] continue[d] to smoke at a rate of 1 pack per day." (A.R. 1433). Plaintiff

stated that she occasionally drank alcohol and that her last use of cocaine had been "2 to 3 months" earlier. (A.R. 1433). Her extremities displayed no clubbing, cyanosis or edema. Her neurological examination revealed no focal deficits. Psychiatrically, plaintiff displayed normal mentation and affect with no homicidal or suicidal ideations. (A.R. 1434). The CT scan of plaintiff's abdomen and pelvis showed "[n]o acute abnormal pathology." (A.R. 1419).

- On January 21, 2009, Mr. Poehl noted: "She does have a history of substance abuse and does state that she has had problems recently with [illegible]. I feel very reluctant to give her any narcotics at this point." (A.R. 1453). On February 14, 2009, Physician's Assistant Peter Fries observed that plaintiff had no weakness in her extremities. He offered a diagnosis of chronic low back pain. (A.R. 1447).

- In September 2009, a social worker, Donald Verhoeven, completed a "Medical Provider's Assessment of Ability to Do Mental Work-Related Activities." (A.R. 1476-80). The transmittal letter from plaintiff's attorney dated September 30, 2009, represented to the Appeals Council that the document was "prepared by Nan Alt, M.D.," but the underlying document clearly states that it was "PREPARED BY Donald L. Verhoeven." (A.R. 1478). Mr. Verhoeven stated that he first met with plaintiff on January 26, 2009. (A.R. 1477). He offered his opinion that plaintiff had "extreme" limitations in her ability to function independently, maintain attention/concentration, understand, remember and carry out complex job

-10-

instructions, demonstrate reliability, restriction of activities of daily living, and difficulties in maintaining concentration, persistence or pace. (A.R. 1476-77). He stated that plaintiff had "marked" limitations in her ability to follow work rules, use judgment, deal with work stresses, and understand, remember, and carry out detailed but not complex job instructions. He stated that plaintiff had "four or more" episodes of decompensation, each of extended duration. (*Id.*). Mr. Verhoeven printed Dr. Alt's name at the end of this undated document. (A.R. 1478). The initials appearing on the document's signature line may or may not be Dr. Alt's. (*Id.*). It is unnecessary to resolve that issue, because the ALJ's decision did not address plaintiff's condition at any time after December 3, 2008. Even assuming Dr. Alt added her initials to the social worker's questionnaire responses in September 2009, it would not have reasonably persuaded the Commissioner to reach a different conclusion on whether plaintiff was disabled during the period at issue: February 23, 1997, through December 3, 2008.

Plaintiff has not demonstrated that remand pursuant to sentence six of 42 U.S.C. § 405(g) is warranted. Plaintiff's request for a sentence-six remand is denied. Plaintiff's arguments must be evaluated on the record presented to the ALJ.

**2.**

Plaintiff argues that the ALJ "erred as a matter of law in relying on a consulting medical source in determining residual functional capacity and in failing to assess non-exertional limitations on a function-by-function basis instead of relying on the consistent opinions of the

treating physicians of record." (Plf. Brief at 29). The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The

ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 2013 WL 896255, at * 9.

Plaintiff argues that the ALJ gave too little weight to the opinions of her treating physicians Robert Gunnell, M.D., Mark Moulton, M.D., Anthony Wilson, M.D., and Psychiatrist Nan Alt, M.D., and gave too much weight to the opinions of consultative examiners Donald Sheill, M.D., and Psychologist Dennis Mulder. (Plf. Brief at 29-47; Reply Brief at 1-4). It is the ALJ's job, not the court's, to weigh the various competing medical opinions. *See Ulman v. Commissioner*, 693 F.3d at 713; *Bass v. Mahon*, 499 F.3d at 509. The fatal flaw in the ALJ's opinion is not in the weight he found was appropriate for the various medical opinions. Most of the opinions emphasized by plaintiff are not medical opinions at all, but rather opinions on administrative issues such as disability, which are reserved to the Commissioner. The deficiency in the ALJ's opinion is his failure to explain his findings in sufficient detail to satisfy the "good reasons" component of 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "To be sure, a properly balanced analysis might allow the Commissioner to ultimately defer more to the opinions of consultative doctors than those of treating physicians." *Gayheart v. Commissioner*, 2013 WL 896255, at * 13. However, the ALJ's opinion lacks the type of focused analysis of the treating physicians' opinions necessary to survive scrutiny under the "good reasons" regulations as currently applied by the Sixth Circuit. *Id.*

For example, plaintiff received treatment at Orthopaedic Associates of Muskegon from Drs. Moulton and Wilson. Although plaintiff's assertion that the ALJ "never mentioned" Wilson and Moulton in his opinion is not entirely accurate, it is not far from the mark. The ALJ never mentioned Dr. Moulton by name. He did note the lumbar fusion surgery that Dr. Moulton performed on July 23, 2003. (A.R. 25, 29). The ALJ did not address the opinions that treating surgeon Moulton expressed in September 2003, September 2004, and April 2005 regarding plaintiff's functional limitations. (A.R. 295-96, 363). The ALJ's omission is particularly glaring,

-14-

in light of the expiration of plaintiff's disability insured status on June 30, 2004. Further, Dr. Sheill conducted his consultative examination almost four years after plaintiff's disability insured status expired. Nothing in Dr. Sheill's opinion suggests that he purported to assess plaintiff's condition for any period before June 3, 2008. (A.R. 1165-76).

The ALJ made a passing reference to Dr. Wilson: "Dr. Wilson's records disclose that the claimant received about a 60 percent relief from lumbar facet injections." (A.R. 29). The ALJ did not engage Wilson's statements that plaintiff was "totally disabled." (A.R. 293-94, 728, 751).

The ALJ repeated the same pattern in his evaluation of the opinions regarding plaintiff's mental impairments. Although he recognized that Dr. Alt was a treating psychiatrist (A.R. 26, 27, 29), he failed to provide an adequate explanation why the opinions of consultative examiner Mulder should receive greater weight. Dr. Alt began treating plaintiff in 2004, before plaintiff's disability insured status expired. (A.R. 394-95). Dr. Mulder conducted his consultative evaluation on June 4, 2008, and did not offer any opinion regarding plaintiff's condition before that date. (A.R. 1177-84). Although Mulder's opinions are not discussed anywhere in the ALJ's opinion, the hearing transcript leaves no doubt that they were the foundation of the ALJ's finding that plaintiff retained the RFC for simple, unskilled work. (A.R. 28, 1538-39). The ALJ's decision must be reversed, because he failed to provide "good reasons" for the weight he gave to the opinions of plaintiff's treating physicians.

### 3.

Plaintiff argues that the ALJ erred as a matter of law in assessing Ms. DeLong's credibility and analyzing the evidence. (Plf. Brief at 57-59). Neither argument withstands scrutiny.

A.    Cherry Picking

Plaintiff accuses the ALJ of "cherry picking" the record. This argument is frequently made and seldom successful, because "the same process can be described more neutrally as weighing the evidence." *White v. Commissioner*, 572 F.3d 272, 284 (6th Cir. 2009). The narrow scope of judicial review of the Commissioner's final administrative decision does not include re-weighing evidence. *See Ulman v. Commissioner*, 693 F.3d at 713; *Bass v. Mahon*, 499 F.3d at 509. The ALJ's opinion can be faulted for its lack of analytical rigor in addressing the opinions of plaintiff's treating physicians, but not for mischaracterization of the underlying medical evidence.

B.    Credibility

This case turns on the ALJ's credibility determination regarding plaintiff's subjective complaints. Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). It is the ALJ's function to determine credibility issues. *See Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528. The court cannot substitute its own credibility determination for the ALJ's. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility

great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

The ALJ found that plaintiff's testimony regarding her subjective functional limitations was not fully credible. The ALJ's full analysis of the evidence is quite lengthy and will not be reproduced in its entirety herein. Among other things, the ALJ noted that plaintiff's daily activities were inconsistent with the level of restriction she claimed. Her credibility was further undermined by her failure to follow prescribed medical treatment:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment.
>
> Although the undersigned has determined that the claimant's work after her alleged onset date was not substantial gainful activity, her work as a babysitter for over two years was, nonetheless significant. Specifically, the claimant was responsible for picking up the children after school, feeding them, and putting them to bed. She reported that she taught them to swim and that she did other activities with them (Exhibit 4E).
>
> Although the claimant alleged at hearing being dependent upon her boyfriend and now her daughters to do household activities, other statements contained in the evidence of record disclose that the claimant has had a greater activity level. Moreover, those daily activities reflect that the claimant would be able to perform work at the light exertional level. She has reported that she is capable of doing craft projects, making jewelry, enjoying the outdoors, and attending flea markets. She has acknowledged that she lives alone and that she does household chores including preparing meals and cleaning. She is able to drive an automobile (Testimony and Exhibit 16E).

Since her 2003 lumbar fusion, the claimant has received only conservative treatment for her back complaints. The claimant has been prescribed Norco for pain and Ativan for Anxiety and depression (Exhibit 15 E/2). In November 2006 the claimant stated that her medications helped her. She felt better and was joking with the treating doctor. She felt well enough to go to Las Vegas with her boyfriend and to Arizona with family members. In March 2007 she was able to travel to Arizona for about one month (Exhibit 45F/30-31).

* * *

The claimant's noncompliance with medical treatment casts further doubt on the credibility of her statements of overwhelming, debilitating symptoms. Notably, in February 2005 CMH closed the claimant's case because of her failure to follow through with additional appointments (Exhibit 15F).

* * *

There is no substantial justification for the claimant's statements that she spends four to eight hours reclining during the day because of her symptoms (Exhibits 16E/4, 19E). Indeed, the objective medical findings, her treatment history, and the comments of the acceptable medical sources of record support a conclusion that she is capable of performing a limited range of light work.

(A.R. 29-31).

It was appropriate for the ALJ to take plaintiff's daily activities into account in making his credibility determination. *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). It was also appropriate for the ALJ to consider plaintiff's failure to follow prescribed treatment. The Social Security regulations make pellucid that the claimant bears the burden of demonstrating "good reason" for her failure to follow prescribed treatment: "If you do not follow the prescribed treatment without good reason, we will not find you disabled." 20 C.F.R. §§ 404.1530(b), 416.930(b). The Sixth Circuit recognizes that a claimant's failure to follow prescribed treatment is evidence supporting an ALJ's factual finding that the claimant's testimony was not fully credible. *See Sias v. Secretary of Health & Human Servs.*, 861 F.2d 475, 479-80 (6th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Heston v. Commissioner*, 245 F.3d at 534. The ALJ credibility finding is supported by more than substantial evidence, and the ALJ gave a more than adequate explanation why he found that plaintiff's testimony was not fully credible. *See Rogers v. Commissioner*, 486 F.3d at 247-49.

**4.**

Plaintiff argues that the ALJ "failed to properly consider" the lay testimony of Ms. DeLong's late boyfriend,[5] her two daughters, and the opinions of Social Worker Rhonda Hill and Physician's Assistant Robert Poehl. (Plf. Brief at 47-57; Reply Brief at 4-5). None of the evidence emphasized by plaintiff is evidence from an acceptable medical source. 20 C.F.R. §§ 404.1513(a), 416.913(a). Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *See Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, SSR 06-3p (reprinted at 2006 WL 2329939, at * 1 (SSA Aug. 9, 2006)); *see also Hickox v. Commissioner*, No. 1:09-cv-343, 2011 WL 6000829, at * 4 (W.D. Mich. Nov. 30, 2011). Family members, friends, social workers, therapists, and physician's assistants are classified as "other sources" 20 C.F.R. §§ 404.1513(d), 416.913(d). The ALJ is required to "consider" evidence from such sources. 20 C.F.R. §§ 404.1527(b), (d)(4), 416.927(b), (d)(4).

---

[5]Dennis Puccia died in April 2008. (Plf. Brief at 22, 48).

A.    Testimony of Plaintiff's Boyfriend and Daughters

Plaintiff states that the lay evidence from Mr. Puccia and her daughters Dawn Wamser and Lorinda DeLong "is the lynchpin of Ms. DeLong's claim" and argues that "the failure to consider or properly evaluate the lay evidence in this case by the ALJ demonstrates that his decision is not based on substantial evidence and his inability to be a fair and unbiased[6] fact-finder." (Plf. Brief at 51-52).    The ALJ considered the testimony provided by plaintiff's boyfriend and daughters and found that it was not entitled to significant weight, because these individuals were biased in favor of plaintiff's claims.    The objective medical evidence provided a more accurate measure of plaintiff's functional limitations:

Dennis Puc[cia], the claimant's boyfriend, appeared and testified at the prior hearing.  The credibility of his testimony is suspect because in May 2007 the claimant said to the certified physician's assistant that she wanted SSI because she was going to help her boyfriend with expenses. Mr. Puc[cia] was therefore a biased witness.  Mr. Puc[cia] was motivated for the claimant to receive Social Security payments so that he could get a contribution toward the household expenses.  Mr. Puc[cia] is now deceased, and the undersigned has considered the testimonies of the claimant's daughters at the most recent hearing.

The claimant's daughters, Dawn Wa[m]ser and Lor[inda] DeLong, testified that they and other family members help the claimant with household and yard work. Ms. Wa[m]ser noted that the claimant was very emotional and cries a lot.  The witness stated that her mother has also expressed the unreasonable belief that someone is trying to kill her, such as putting poison in the car.  Ms. DeLong related that the claimant did not have a substance abuse problem but that she was unable to care for herself physically and mentally.

The witnesses' comments tend to support the claimant's testimony and are reflective of the concern they have for their mother.  Their comments, however, are pertinent only as third-party observations and are not a determining factor in the ultimate decision of whether or not

_____

[6]Plaintiff sprinkles allusions to the ALJ's bias throughout her brief.  Issues raised in a perfunctory manner are deemed waived.  *See Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012). Even assuming plaintiff did not waive the issue, she has shown nothing approaching the level of evidence necessary to overcome the presumption that the ALJ carried out his duties fairly and impartially.  *See Bailey v. Commissioner*, 413 F. App'x 853, 856 (6th Cir. 2011); *Collier v. Commissioner*, 108 F. App'x 358, 364 (6th Cir. 2004).

the claimant is disabled.  The undersigned is persuaded, rather, by the objective medical findings, the comments of the acceptable medical sources, the claimant's treatment regimen, and her prescribed medication usage to conclude that the allegations of debilitating symptoms and limitations are not credible.  The undersigned finds that the claimant retains the residual functional capacity for a limited range of simple, unskilled light work as set forth above.

(A.R. 31-32).  The court finds no error in the ALJ's consideration of the lay opinion evidence provided by Mr. Puccia and plaintiff's daughters.

      B.    <u>Physician's Assistant Robert Poehl and Social Worker/Therapist Rhonda Hill</u>

Plaintiff argues that the ALJ committed reversible error in the weight given to the opinions of Mr. Poehl and Ms. Hill.  Social workers, therapists, and physician's assistants are not acceptable medical sources.  The ALJ is required to consider  information provided by such "other sources."  *See* 20 C.F.R. §§ 404.1513(d), 416.913(d); SSR 06-3p, 2006 WL 2329939, at * 1, 4; *Cruse*, 502 F.3d 532, 541 (6th Cir. 2007).  The ALJ rejected Mr. Poehl's opinion in a very short paragraph (A.R.31) and he made one reference to Ms. Hill (A.R. 27), but did not consider her opinions in any detail.  (A.R. 795-97, 1158-60, 1183-84).  It is not necessary to determine whether the ALJ's handling of these opinions rose to the level of reversible error.  *See Gayheart v. Commissioner*, 2013 WL 896255, at * 12.  It is sufficient to note that on remand the Commissioner will have another opportunity to carefully consider the opinions provided by these individuals.

**5.**

Plaintiff asks the court to order the Commissioner to award DIB and SSI benefits.  (Plf. Brief at 59; Reply Brief at 5).  "[T]he court can reverse the [Commissioner's] decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."  *See Faucher v. Secretary of Health &*

*Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Id.*; *see Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985); *see also Kalmbach v. Commissioner*, 409 F. App'x 852, 865 (6th Cir. 2011). Here, the Commissioner's decision is being reversed because the ALJ did not comply with the procedural requirement of providing "good reasons" for the weight given to the opinions of plaintiff's treating physicians, not because the record strongly establishes plaintiff's entitlement to benefits.

### Conclusion

For the reasons set forth herein, the Commissioner's decision will be vacated and the matter remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.


Dated:  March 28, 2013                    /s/  Joseph G. Scoville                         
                                          United States Magistrate Judge